UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JANET PAYNE,

    Plaintiff,

v.

MENARD, INC., d/b/a MENARD,

    Defendant.

Case No.: 2:15-CV-317-JVB-PRC

**OPINION AND ORDER**

Plaintiff Payne sued Defendant Menard pursuant to the Americans with Disabilities Act and the Age Discrimination in Employment Act. Payne also brought a claim for worker's compensation retaliation under Indiana law.[1]

Menard moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) on the ground that, by signing an "EMPLOYEE AGREEMENT" when she started working at Menard's, Payne agreed to a mandatory arbitration clause.

Plaintiff moved for a stay, arguing that the charge she filed against Menard with the National Labor Relations Board on January 6, 2016—in which she complains about the arbitration agreement—may lead the NLRB to rescind the arbitration agreement, which would render the motion to dismiss moot. The Court granted the stay on February 18, 2016.

On October 21, 2016, Menard moved to lift the stay given the resolution of the NLRB charge. The NLRB did not find the arbitration agreement invalid. The Court lifted the stay on October 24, 2016, and now addresses Menard's motion to dismiss.

---

[1] The Court reminds Plaintiff of Northern District of Indiana Local Rule 5-4(a)(4), requiring the use of at least 12-point type.

A.   **Summary of Facts**

The parties do not dispute the following facts. When Menard hired Payne, she signed an Employment Agreement. (Mot. Dismiss, DE 6, ¶ 3; Resp. Mot. Dismiss, DE 10 at 2.)

This Agreement sets out a process for resolving claims:

> **6. Remedy.** I agree that all problems, claims, and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations section of the Grow With Menards Team Member Information Booklet which I have received. If I am unable to resolve the dispute by these means, I agree to submit to final and binding arbitration. Problems, claims, or disputes subject to binding arbitration include, but are not limited to: statutory claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act, Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, Americans with Disabilities Act, Family Medical Leave Act, and non-statutory claims such as contractual claims, quasi-contractual claims, tort claims, and any and all causes of action arising under state laws or common law.
>
> These claims shall be resolved by binding arbitration with the American Arbitration Association ("AAA") located at 225 North Michigan Avenue, Suite 252, Chicago, Illinois 60601-7601 under its current version of the National Rules for the Resolution of Employment Disputes. I understand that the AAA National Rules for the Resolution of Employment Disputes shall govern the fees in this matter, and that the costs of filing a demand for arbitration will not exceed the costs of filing a civil complaint in federal court. A copy of the National Rules for the Resolution of Employment Disputes and fee schedule of the American Arbitration Association may be obtained by contacting it at the address listed above.
>
> I agree that all arbitrators selected shall be attorneys. This provision shall supersede any contrary rule or provision of the forum state.
>
> **Nothing in this Agreement infringes on my ability to file a claim or charge of discrimination with the U.S. Equal Employment Opportunity Commission or comparable state or local agencies. These agencies have the authority to carry out their statutory duties by investigating the charge, issuing a determination, filing a lawsuit in Federal or state court in their own name, or taking any other action authorized under these statutes. I understand that I have the right to participate in such action.**

Menard, Inc. is engaged in commerce using U.S. Mail and telephone service. Therefore, the Agreement is subject to the Federal Arbitration Act, U.S.C. Sections 1–14 as amended from time to time.

(Employee Agreement, DE 7-1, § 6.)

At this point, the parties' claims diverge. Payne claims she suffered injury at work on May 28, 2014, when four cases of ceramic tile fell on her shoulder and arm. (Compl., DE 1, ¶ 13.) Plaintiff asserts claims under the ADA and ADEA, as well as a claim for worker's compensation retaliation under Indiana law. (Compl., DE 1.)

Menard argues that the Employee Agreement requires Payne to submit her claims to binding arbitration. (Mot. Dismiss, DE 6, ¶ 4.) Accordingly, Menard moved for dismissal pursuant to Rule 12(b)(3).

Payne's NLRB charge challenged the arbitration agreement. (DE 12-1 at 3.) But the Settlement Agreement regarding that charge provides that Menard's "arbitration program does not violate the Act as it relates to individual claims." (DE 19-1 at 1.) Following the resolution of the NLRB charge and the lifting of the stay, the Court will now evaluate the motion to dismiss based on the arbitration clause.

**B.    Discussion**

**(1)    *Standard for Evaluating a Motion to Dismiss under Rule 12(b)(3)***

When an arbitration agreement requires arbitration outside the district where the lawsuit pends, a Rule 12(b)(3) motion to dismiss for improper venue is the proper procedure. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) (citing *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606–07 (7th Cir. 2003)). Here, the Agreement calls for arbitration in Chicago, outside this Court's district. (Employee Agreement, DE 7-1, ¶ 6.)

When considering a Rule 12(b)(3) motion, the Court must construe the facts in favor of the plaintiff. *Faulkenberg*, 637 F.3d at 806.

When ruling on a Rule 12(b)(3) motion, the Court may look to evidence outside the pleadings. *Id.* at 809–10.

**(2)** ***Arbitration agreement***

(a) *Applicable law*

Arbitration agreements between employers and employees are generally covered by the Federal Arbitration Act. 9 U.S.C. §§ 1–16; *See Circuit City Store, Inc. v. Adams*, 532 U.S. 105, 118–24 (2001).

The FAA states that a provision in a contract to settle by arbitration any future controversy arising out of the contract or the subject transaction is valid and enforceable, absent grounds for revocation:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA places arbitration agreements on the same level as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

4

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Statutory claims "may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26. The party resisting arbitration "bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

To determine whether a claim is arbitrable, courts examine: (1) whether the parties entered into a valid and enforceable arbitration agreement under applicable state law; (2) whether the claims asserted fall within the scope of the arbitration agreement; and (3) whether the moving party waived its right to arbitrate. *DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 902 (N.D. Ind. 2001) (citing *Gilmer*, 500 U.S. at 34); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 364 (7th Cir. 1999).

The parties agree that Plaintiff's claims fall within the scope of the arbitration agreement. (Br. Supp. Mot. Dismiss, DE 7 at 6–7; Resp. Mot. Dismiss, DE 10 at 2.) Additionally, Plaintiff does not claim Defendant waived its right to arbitrate. Accordingly, the Court will focus on the first issue: whether the written agreement is binding under applicable state law.

Indiana law requires four elements to form a valid contract: offer, acceptance, consideration, and manifestation of mutual assent. *In re Paternity of M.F.*, 938 N.E.2d 1256, 1259 (Ind. Ct. App. 2010) (citing *Ind. B.M.V. v. Ash, Inc.*, 895 N.E.2d 369 (Ind. Ct. App. 2008)). The written agreement satisfies these elements.

(b) *The arbitration agreement is sufficiently clear under Indiana law*

Plaintiff claims the arbitration agreement is not a valid, enforceable contract under Indiana law "because it does not expressly state the rights given up, it is silent as to costs, and it provides misinformation." (Resp. Mot. Dismiss, DE 10 at 2, emphasis removed.) Plaintiff complains that the arbitration agreement lacks clarity and does not expressly state that the employee gives up her right to court proceedings or jury trial. (*Id.* at 3.)

This Court disagrees. The Agreement might not be a paragon of clarity, but it is clear enough. It is far from being so incomprehensible as to be unenforceable.

After invoking the principle of subsidiarity—that people should resolve issues at the smallest, most local level possible—the Agreement's plain language mandates arbitration:

> I agree that all problems, claims, and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations section of the Grow With Menards Team Member Information Booklet which I have received. If I am unable to resolve the dispute by these means, I agree to submit to final and binding arbitration.

(Employee Agreement, DE 7-1, § 6.) By signing the Agreement, Plaintiff agreed that if she failed to resolve any dispute through the procedures outlined in the Information Booklet—which is not part of the record, but which Plaintiff does not claim permit litigation before this Court—then she would submit to final and binding arbitration. (*Id.*) This requirement is clear.

The Agreement identifies the types of claims subject to binding arbitration, and lists by name most of the claims in this lawsuit: claims under the ADEA and the ADA. (*Id.*) The Agreement also states that "any and all causes of action arising under state laws or common law"—like Plaintiff's worker's compensation retaliation claim—are subject to binding arbitration. (*Id.*)

If all that is not clear enough, the Agreement states in bold, capital letters, immediately above the signature blocks:

> **THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE READ THIS ENTIRE AGREEMENT AND I FULLY UNDERSTAND THE LIMITATIONS WHICH IT IMPOSES UPON ME, AND I UNDERSTAND THAT THIS AGREEMENT CANNOT BE MODIFIED EXCEPT BY THE PRESIDENT OF MENARD, INC.**

(*Id.*) The binding-arbitration requirement is clear, and Plaintiff's arguments in this regard fail.

(c)     *The arbitration agreement is not impossible or unconscionable*

Plaintiff further claims the arbitration agreement "must fail due to impossibility and unconscionability." (Resp. Mot. Dismiss, DE 10 at 4.) Plaintiff claims "the plain obligations set out by the contract cannot be followed." (*Id.*) Plaintiff notes that the 225 North Michigan Avenue address given in the arbitration agreement for the AAA is wrong. (*Id.* at 5.) Plaintiff notes that the arbitration agreement does not list a website address or telephone number for the AAA. (*Id.*)

At this procedural stage, the Court accepts as true the contention that the address listed for the AAA in the Agreement is wrong. Defendant claims the 225 North Michigan Address is the AAA's former address. (Reply Supp. Mot. Dismiss, DE 11 at 6.) However, whether the address listed in the Agreement was correct on the day Plaintiff signed it, or whether it was never correct due to a typographical error or some other mistake, is immaterial for the following reasons.

First, Plaintiff does not claim she attempted to contact the AAA before filing this federal lawsuit, but failed. Plaintiff filed this lawsuit on August 25, 2016. (Compl., DE 1.) Plaintiff claims she attempted to contact the AAA by mail several days later, on August 28, 2016, and the mail was returned as undeliverable. (Resp. Mot. Dismiss, DE 10 at 5; Envelope, DE 10-3.)

7

Second, the arbitration agreement survives slight discrepancies regarding details because the arbitration agreement manifests the parties' basic intent to arbitrate. The Agreement's plain language mandates final and binding arbitration if internal procedures fail. (Employee Agreement, DE 7-1, § 6.) The Agreement specifies the name of the arbitration group charged with resolution and an address for that group. (*Id.*) If the address is wrong, the identity of the charged arbitration group remains.

Indeed, the severability clause of the Agreement provides: "I agree that if the scope or enforceability of any part of this Agreement is in any way disputed at any time, a court or arbitrator may modify and enforce the Agreement to the extent that it believes to be reasonable under the circumstances existing at that time." (*Id.*) The Court does not hold that formal modification of the Agreement is necessary regarding the AAA's address. But if it were necessary, the reasonable modification would be to replace the incorrect AAA address with the correct AAA address.

The ubiquity of the internet, phone books, and public librarians also renders Plaintiff's complaint about the Agreement's lack of a website address or telephone number for the AAA unavailing. Nor does Plaintiff cite any law in support of the proposition that an arbitration clause must include the website address or phone number of the arbitration group.

(d) *Arbitration rules*

Plaintiff also faults the Agreement for referencing the "National Rules for the Resolution of Employment Disputes" when, at least as of the date Plaintiff filed her Response to Motion to Dismiss, a Google search indicated the AAA no longer has rules by that name. (Resp. Mot. Dismiss, DE 10 at 5.) Plaintiff claims the Agreement purports to mandate that the parties use

*only* these rules, which are now extinct. (*Id.*) But the Agreement doesn't require that. Moreover, Plaintiff doesn't claim there is no current version of these rules. In any event, even if there were an ambiguity regarding which arbitration rules should apply, this would not render the arbitration mandate invalid. The parties could raise any dispute regarding which rules to use with the arbitrators, if necessary.

On April 27, 2006, when Plaintiff and a representative of Defendant signed the Agreement, neither could predict the address to which the AAA would apparently later move, and neither could anticipate the exact name of the relevant arbitration rules the AAA would later adopt regarding employment disputes. The address change and rule update do not render the contract impossible to perform, or unconscionable, or otherwise invalid.

(e) *Arbitration costs and fees*

Plaintiff also argues the Agreement is unconscionable because it is silent regarding who will bear the costs and fees of arbitration. (Resp. Mot. Dismiss, DE 10 at 9–10.) Plaintiff cites no law supporting this argument. And Plaintiff acknowledges that the Agreement is not completely silent regarding the costs and fees of arbitration: the Agreement provides that the AAA's rules will govern fees, and that the costs of filing an arbitration demand will not exceed the costs of filing a complaint in federal court. (*Id.* at 10.)

Even if the Agreement were completely silent regarding the costs and fees of arbitration, this fact alone would not render the arbitration mandate unenforceable. In *Green Tree Financial v. Randolph*, the arbitration agreement was silent about the costs and fees of arbitration. *Id.*, 531 U.S. at 90. The Supreme Court held that fact alone was "plainly insufficient to render [the arbitration agreement] unenforceable." *Id.* at 91.

9

A party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. Plaintiff has not met that burden.

One "highly probative" factor is the comparison of arbitration expense to litigation expense. *James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005). Plaintiff has not offered any compelling arguments in this regard. Indeed, the Agreement provides that "the costs of filing a demand for arbitration will not exceed the costs of filing a civil complaint in federal court." (Employee Agreement, DE 7-1, § 6.)

For all these reasons, the Court holds that the arbitration agreement signed by the parties is valid and enforceable.

**C.     Conclusion**

The Court **GRANTS** the motion to dismiss (DE 6). The Court directs the Clerk to close this case.

**SO ORDERED** on January 17, 2017.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE
